IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAUL LEE DRIVER,                )
                                )
        Petitioner,              )    Civil No. 07-1344-TC
                                )
                                )
   v.                            )    FINDINGS AND RECOMMENDATION
                                )
                                )
STATE OF OREGON,                )
                                )
        Respondent.              )
_____)

COFFIN, Magistrate Judge.

Represented petitioner brings this federal habeas corpus proceeding under 28 U.S.C. Section 2254. He challenges his convictions on three counts of Sexual Abuse in the First Degree after a trial by a jury.

Petitioner contends that his convictions should be overturned because the trial court erred in excluding witness testimony rebutting the victim's denial of a previous recantation of a claim of sex abuse. In particular, petitioner claims that the trial court's actions violated his rights under the

1 - FINDINGS AND RECOMMENDATION

Confrontation and Compulsory Process Clauses of the Oregon and United States Constitutions.

As discussed in more detail below, relief on these claims should be denied because the claims under the Oregon Constitution fail to state a claim for relief, the claim under the Compulsory Process Clause of the Sixth and Fourteenth Amendments is procedurally defaulted, and the claim under the Confrontation Clause of the Sixth and Fourteenth Amendments is without merit and was denied by the State Court in a decision that is entitled to deference under 28 U.S. C. Section 2254(d) and (e)(1).

## BACKGROUND

On June 8, 2000, the Lincoln County Grand Jury accused petitioner by indictment of three counts of Sexual Degree in the First Degree. All three counts involved a child under the age of 14 years, "M.T."

M.T. testified at trial that petitioner was her babysitter and she would often spend the night at his house. She further testified that petitioner kissed her and touched her on the vagina, made her touch him on the penis, and touched her chest.

During its case in chief, the defense called M.T. back to the stand. Petitioner's attorney asked M.T. whether she had once made up a story about a friend's Uncle Freddy touching her privates. M. T. said she did not:

> Q. Okay [M.T.], was there a time when you made up a story about
> Uncle Freddy touching your private parts that wasn't true?
> A. No. Who told you that?
> Q. Did you tell Randi that Uncle Freddy had touched your privates?
> A. No.
> Q. Do you remember talking with Uncle Freddy's wife, aunt Sherry?
> A. Well, not about that, but I-

2 - FINDINGS AND RECOMMENDATION

> Q. Not about that?
> A. Yeah, because that never happened.
> Q. Did you tell Aunt Sherry that you made up this story because you were mad at Uncle Freddy?
> A. No.

Tr. Vol. III at 297.

In anticipation of two defense witnesses, the prosecutor objected under OEC 608 (2) to the introduction of extrinsic evidence of the alleged false accusation of Uncle Freddy by M.T. She argued that, while the Confrontation Clauses of the Oregon and Federal Constitutions require that the trial court, under certain circumstances, allow the defendant to cross examine a witness about false accusations, petitioner had already done that and had no additional right to bring in extrinsic evidence. Petitioner's trial counsel countered that, under the Confrontation Clause, the right to cross-examine the witness includes the opportunity to impeach the witness with contradictory evidence.

The court allowed the defense to make an offer of proof. Petitioner's attorney presented two witnesses in support of the theory that M.T. had made a previous false allegation against Uncle Freddy. First Sherry Prestridge, Uncle Freddy's sister, testified that her niece Randi told her that M.T. had said that Uncle Freddy had pulled her pants down and touched her butt. M.T. was six at the time. When Prestridge asked M.T. about what her niece said, she initially denied making the accusation. According to Prestridge, M.T. then said that the accusation was false and that she was mad because Uncle Freddy would not let her into the house. Charles Osborne (Uncle Freddy) then testified that he never pulled M.T.'s pants down and touched her, but that he became aware of an accusation that he did. He testified that M.T. had made the accusation because she was mad at his niece.

3 - FINDINGS AND RECOMMENDATION

After hearing the offer of proof, the court ruled that the testimony was inadmissible.

Petitioner then testified in his own defense. He denied touching M.T. on the breast or vagina for sexual purposes and denied having M.T. touch his penis. He admitted kissing M.T., but claimed he did it just to tease her. Her further admitted there were times he was alone with M.T. when his mother was not there.

The jury returned a guilty verdict on all three counts of Sexual Abuse in the First Degree. The Court sentenced petitioner to 75 months in prison, the mandatory minimum sentence for sexual Abuse in the First Degree in Oregon.

Petitioner directly appealed his conviction, arguing that the court's disallowing the testimony of Prestridge and Osborn violated his rights under the Confrontation and Compulsory Process Clauses of the Oregon and Federal Constitutions. The Oregon Court of Appeals denied relief in a published opinion. State v. Driver, 192 Or.App. 395, 86 P.3d 53 (2004). The court held that the Confrontation Clause "does not provide a right to present extrinsic evidence of a prior false allegation of abuse." Id. at 402. As to petitioner's claim under the Compulsory Process Clauses, the court held that petitioner failed to preserve the matter for appeal because he did not did adequately raise this claim to the trial court. Id. at 406. The court noted that even if the argument had been preserved, it would be unavailing because "[c]ompulsory process guarantees the right to obtain the testimony of witnesses that is otherwise allowed, but it does not guarantee a defendant the 'right to secure the attendance of witnesses whose testimony he had no right to use.' " Id. at 406 (quoting Washihngton v. Texas, 388 U.S. 14, 23 (1967).

Petitioner petitioned the Oregon Supreme Court for review, arguing that OEC 609-1 allows extrinsic evidence to impeach a complaining witness's credibility when the witness denies making

4 - FINDINGS AND RECOMMENDATION

and recanting an allegation of sex abuse and the state and federal Confrontation Clauses require admission of extrinsic evidence of a prior false allegation of abuse. The Oregon Supreme Court denied review.

Petitioner then sought post-conviction relief (PCR) again raising the claims he raised to the Oregon Court of Appeals on direct appeal. The PCR trial court denied relief finding that petitioner's claims of trial court error were procedurally barred under Palmer v. State, 318 Or. 352, 354, 867 P.2d 1368 (1994). The Oregon Court of Appeals granted the Defendant-Respondent's Motion for Summary Affirmance, and Oregon Supreme Court denied review.

## DISCUSSION

Petitioner's briefing focuses exclusively on his claim under the Confrontation Clause of the Sixth and Fourteenth Amendments.[1] However, as discussed in more detail below, the Confrontation Clause claim is without merit and was denied by the State court in a decision that is entitled to deference under 28 U.S.C. Section 2254(d) and (e)(1).

I. **The state court's decision to deny relief on Petitioner's Claim is due deference under AEDPA, and should not be disturbed.**

　　A. **Applicable law on AEDPA deference**

Petitioner filed his original petition for habeas corpus relief after the effective date of the

---

[1] In its Response to the habeas petition, respondent persuasively argued that petitioner's claims of violations of the Oregon Constitution fail to state a claim upon which relief may be granted. P. 6 of Response( #19). Respondent also persuasively argued and demonstrated that petitioner procedurally defaulted his claim of a violation of the Compulsory Process Clause of the Sixth and Fourteenth Amendments and that relief on that claim should be denied. P.p. 6-11 of Response (#19). Petitioner did not provide argument in opposition to either of respondent's arguments. As such, and because the arguments are well taken, the claims for violations of the Oregon Constitution and the Compulsory Process Clause of the Sixth and Fourteenth Amendments should be dismissed.

5 - FINDINGS AND RECOMMENDATION

Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Therefore, AEDPA applies to the review of his petition.

The relevant portion of AEDPA amended 28 U.S.C. § 2254 by adding the following:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

State court determinations need not be deferred to in every case. See Williams v. Taylor, 529 U.S. 362, 389 (2000)("If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail."). However,

> AEDPA plainly sought to ensure a level of deference to the determinations of state courts, provided those determinations did not conflict with federal law or apply federal law in an unreasonable way. Congress wished to curb delays, to prevent "retrials" on federal habeas, and to give effect to state convictions to the extent possible under law. When federal courts are able to fulfill these goals within the bounds of the law, AEDPA instructs them to do so.

Williams, 529 U.S. at 386 (citation omitted).

The Williams court also found different and independent meanings in the "contrary to" and "unreasonable application of" clauses of AEDPA. Under the "contrary to" clause, a federal court may only grant habeas relief if: (1) the state court applied a rule that contradicts the governing law

6 - FINDINGS AND RECOMMENDATION

set forth in Supreme Court caselaw; or (2) the case confronting the state court was materially indistinguishable from a Supreme Court decision yet the court nevertheless arrived at a result different from the Supreme Court precedent. Id. at 406. Under the "unreasonable application of" clause, a federal court may only grant habeas relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 412-13.[2] The evaluation of reasonableness is tested against an objective standard. Id. at 409-10. The Court also noted that:

> [T]he most important point is that an <u>unreasonable</u> application is different from an <u>incorrect</u> application of federal law . . . In § 2254(d)(1), Congress specifically used the word "unreasonable," and not a term like "erroneous" or "incorrect." Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 410-11 (emphasis in original).

### B. Applicable law on Confrontation Clause claims and analysis in this case

Petitioner argues that Oregon Courts unreasonably applied United States Supreme Court precedent in the disposition of this case.[3] Petitioner argues on this claim that "[t]he fundamental flaw

---

[2] The Court has also noted that a state-court decision may be an unreasonable application of clearly established federal law if "the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled." Remdass v. Angelone, 530 U.S. 156 (2000).

[3] As previously noted, the Oregon Court of Appeals held that the Confrontation Clause "does not provide a right to present extrinsic evidence of a prior allegation of abuse." State v. Driver, 192 Or. App. 395, 402, 86 P.3d 53 (2004). The court summarized the limitations on a defendant's rights under the Confrontation Clause as follows:
> Interpretation of the Sixth Amendment Confrontation Clause by the United States Supreme Court is similarly limited to cross-examination rights. For example, in Davis v. Alaska, the Court held 'The main and essential purpose of confrontation is <u>to secure for the</u>

7 - FINDINGS AND RECOMMENDATION

in the state court's analysis is that it conflates generic impeachment as to truthfulness, through extrinsic evidence of a prior lie (which can, and is, constitutionally proscribed by evidence rule 608), with specific impeachment as to the witness' motivation to lodge a false accusation which, in a case such as this, must be allowed under the Federal Confrontation Clause." P. 22 of Brief in Support of Petitioner for a Writ of Habeas Corpus (#50). Petitioner argues that the Confrontation Clause requires admission of extrinsic evidence to impeach a complaining witness's credibility when the witness denies making and recanting an allegation of sexual abuse during cross-examination if the purpose of the extrinsic evidence is to establish a motivation to lie, as opposed to establishing a history or untruthful allegations. However, petitioner's claim fails because there is no clearly established Supreme Court precedent requiring a finding that a state violates due process by prohibiting the use of extrinsic evidence in the circumstances of this case.

---

> opponent the opportunity of cross-examination. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.'(quoting J. Wigmore, 5 Evidence, Section 1395, 123(3d ed 1940))(emphasis in Davis). Not only are confrontation rights limited to cross-examination, but those cross-examination rights are subject to further parsing if the trial judge has 'concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.' Delaware v. Van Arsdale, 475 U.S. 673, 679 (1986). Trial judges have less discretion to limit cross-examination where evidence suggests that the victim has a bias against the defendant or a motive to accuse falsely. See Boggs v. Collins, 226 F.3d 728, 737 (6th Cir. 2007); cert. den., 532 U.S. 913 (2001); U.S. v. Bartlett, 856 F.2d 1071 (8th Cir. 1988); Hughes v. Raines, 641 F.2d 790 (9th Cir. 1981). But even when bias or motive is at issue, the most the Confrontation Clause grants a defendant is the right to cross-examine the allegedly biased witness.

Id. at 402-403.

Petitioner does not cite to any Supreme Court precedent to support his argument that the Confrontation Clause requires the admission of extrinsic evidence when the purpose is to establish a motive to lie. The Supreme Court cases that petitioner does cite did not address that issue. In Davis v. Alaska, 415 U.S. 308 (1974), the Supreme Court established that the Sixth Amendment requires that a defendant in a criminal case be allowed to impeach the credibility of a prosecution witness by cross-examination directed at a possible bias deriving from the witness' probationary status as a juvenile delinquent. Petitioner's case here, however, involves not impeachment by cross-examination, which petitioner was allowed, but the general use of extrinsic evidence to impeach a witness' credibility. Similarly, in Olden v. Kentucky, 488 U.S. 227 (1988), the defendant had not been allowed to question the complainant about her motive to fabricate a rape allegation. In Delaware v. Van Arsdale, 475 U.S. 673 (1986), defense counsel had been prevented from cross-examining a witness for the prosecution about the fact that he had a criminal charge against him dropped when he agreed to talk to the prosecutor. These cases do not involve extrinsic evidence at all but controversies over the right to cross-examine the complainant or another accusing witness. No United States Supreme Court case has ever held that the Confrontation Clause required the inclusion of extrinsic evidence that is otherwise prohibited by the state's evidentiary rules. See Ellsworth v. Warden, 333 F.3d 1, 8 (1st Cir. 2003)(holding that State Court's decision denying a Confrontation Clause claim concerning testimony about a prior false accusation of sexual abuse was not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court); Yancey v. Gilmore, 113 F.3d 104, 108 (7th Cir. 1997) ("although the Supreme Court has frequently held that states must permit cross-examination that will undermine a witness' testimony, it has never held -- even suggested-- that the longstanding rule restricting the use of

9 - FINDINGS AND RECOMMENDATION

specific instances and extrinsic evidence to impeach a witnesses' credibility pose constitutional problems")(quoting Hogan v. Hanks, 97 F.3d 189, 191 (7th Cir. 1996)); Murray v. Schiro, 2008 U.S. Dist. LEXIS 29729 at * 56 (D. Ariz. 2008)("there is no clearly established Supreme Court precedent holding that a state violates due process by prohibiting impeachment through the use of extrinsic evidence").

The Circuit Court of Appeals cases relied on by petitioner also fail to establish his premise that the Confrontation Clause requires the admission of extrinsic evidence when the purpose is to establish a motive to lie. Petitioner characterizes Redmond v. Kingston, 240 F.3d 590 (7th Cir. 2001), as finding "that the Wisconsin Court of Appeal unreasonably applied federal law in upholding a trial court ruling excluding proof of a prior false allegation of rape through extrinsic evidence." P. 24 of Petitioner's Brief. However, Redmond did not involve extrinsic evidence at all. Instead, the trial court had disallowed the cross-examination of the accuser in order to show that she had previously made up a story about being raped. 240 F.3d at 591. Petitioner also notes in his brief that Judge Posner, in writing for the Seventh Circuit, quoted from a Fourth Circuit case:

> while 'generally applicable rules limit inquiry into specific instances of conduct through the use of extrinsic evidence and through cross-examination with respect to general credibility attacks, ... no such limit applies to credibility attacks based on motive or bias.'

Redmond, 240 F.3d at 593 (quoting Quinn, 234 F.3d 837, 845(4th Cir, 2000)). However, the Quinn quote refers not to Confrontation Clause requirements, but to evidentiary requirements in West Virginia. Quinn, 234 F.3d at 845. Judge Posner did not hold that clearly established Supreme Court law held the Confrontation Clause requires the admission of extrinsic evidence when the purpose

10 - FINDINGS AND RECOMMENDATION

is to establish a motive to lie. [4]

Petitioner has also requested and been granted leave to file a sur-reply with an additional case. He cites Fowler v. Sacramento County Sheriff's Department, 421 F.3d 1027 (9th Cir. 2005). Petitioner states that Fowler "held that the California Court's preclusion of impeachment of the alleged victim of sex abuse through cross-examination about prior, apparently false, accusations of molestation by other men, was an objectively unreasonable application of clearly established federal law as determined by the Supreme Court." P. 2 of Sur-Reply. Petitioner argues that "[a]lthough the Fowler opinion addresses impeachment through cross-examination, it is explicit that, in the event the putative victim denies the prior false allegations, she may be established through extrinsic evidence." Id.

The Fowler Court stated:

> We therefore conclude that the trial court's preclusion of the cross-examination was an objectively unreasonable application of clearly established federal law as determined by the Supreme Court. There can be no doubt that the precluded cross-examination sufficiently bore on Lara's reliability or credibility such that a jury might reasonably have questioned it. Nor were the trial court's concerns about waste of time, confusion and prejudice sufficiently well-founded to justify precluding rather than limiting cross-examination.

421 F.3d at 1041(emphasis added). Earlier in the opinion, the Fowler Court stated:

> But where, as here, the proffered cross-examination might have

---

[4] Plaintiff has also cited two Ninth Circuit cases in support of his argument. However, United States v. Schoneberg, 396 F.3d 1036 (9th Cir. 2005) did not involve extrinsic evidence but a limitation on the defendant's right to cross-examine a conspirator who had testified against him. Franklin v. Henry, 122 F.3d 1270 (9th Cir. 1997) didn't involve the Confrontation Clause at all, but the defendant's ability to introduce as evidence his own testimony that the victim had previously accused her mother of molesting her in his presence.

11 - FINDINGS AND RECOMMENDATION

> reasonably influenced the jury's assessment of Lara's reliability or credibility, <u>absent sufficient countervailing interests</u>, the jurors were entitled to have the benefit of the defense theory before them .... Turning now to the countervailing interests, the trial court predicted that the cross-examination 'would consume an inordinate amount of time,' but in fact, there is no reason to believe that cross-examination as to the two prior incidents necessarily would have. Had the cross-examination been permitted, Fowler would have asked Lara about the prior incidents. At oral argument, Fowler estimated that this testimony would take no more than one hour. Only if Lara testified inconsistently with either her interview or the police report would Fowler have been forced to resort to extrinsic evidence in the form of the MDIC interview, police report or other witnesses.... Even then, Fowler advised the trial court that he would 'be happy' 'to abide by whatever restrictions the Court wished to impose as far as keeping [the cross-examination] brief, relatively unobtrusive, yet getting the probative facts before the jury.' Rather than setting forth reasonable restrictions and holding Fowler to his word, the trial court simply <u>excluded any cross-examination at all</u> on the subject.

421 F.3d at 1040 (emphasis added, footnote omitted, some quotation marks omitted).

As can be seen from the above, the trial judge in <u>Fowler</u>, unlike the trial judge in the present case, entirely precluded cross-examination of the complainant on the issue. In addressing the entire preclusion of cross-examination, the <u>Fowler</u> Court was compelled to examine whether the trial judge had sufficient countervailing interests for the preclusion. In that context, the <u>Fowler</u> Court mentioned extrinsic evidence, but was far from "explicit" and did not state that extrinsic evidence had to be allowed in the circumstances of the present case where petitioner was allowed to cross-examine the complainant. <u>Fowler</u> does not constitute clearly established law on this matter as determined by the United States Supreme Court.

The State Court's ultimate decision to deny relief on petitioner's claim was neither "contrary to" nor an "unreasonable application of " clearly established law as determined by the United States

12 - FINDINGS AND RECOMMENDATION

Supreme Court. Accordingly, under 28 U.S.C. §2254, as modified by the AEDPA and its exceptions, relief on petitioner's claims should be denied.

Even assuming the state courts erred in prohibiting the testimony of Prestridge and Osborn, the error did not have a substantial or injurious effect on the verdict and therefore, habeas relief cannot be granted. See Brecht v. Abrahamson, 507 U.S. 619, 623 (1993). In light of the substantial evidence against petitioner, the barred testimony could not reasonably have had a substantial or injurious effect on the verdict. First, the evidence of the false accusation was of little probative value because it was ambiguous and remote. For example, the two witnesses disagreed as to why M.T. made the false accusation - Prestridge testified that M.T. was mad at Osborn while Osborn said M.T. made the accusation because she was mad at his niece. Moreover, the proffered testimony related to a collateral matter that had occurred three years earlier when M.T. was six. It also was not relevant to show any motive for the victim to fabricate an accusation against petitioner.

In contrast, the State submitted substantial evidence against petitioner. M.T.'s description of petitioner's conduct was graphic and compelling. In addition, there was evidence of petitioner's unusual attention to a young girl who was not a relative. Petitioner admitted to kissing M.T. on her cheeks, lips, arms, hands, feet, and all over her face. Petitioner's credibility was diminished when he testified that he was not any more affectionate with M.T. than he was with other children that he was around and that the kissing was not affectionate but teasing. He subsequently conceded on cross-examination that M.T. was the only one with whom he engaged in that form of "teasing." Tr. Vol. IV at 432-434.

Petitioner implies that the trial judge disagreed with the jury verdict and claims that the statements the judge made at sentencing could "fairly be categorized as an apology for the trial's

13 - FINDINGS AND RECOMMENDATION

outcome." p. 32 of Petitioner's Brief. However, the judge said specifically, "I don't have a quarrel with the jury verdict" and his further statements as he sentenced petitioner show he was not apologetic to petitioner:

> You will forever be changed by your exposure to prison. But I sincerely don't believe that you will be as affected by your experience as [M.T.] will be by hers. And I fully expect that the damage you inflicted on her will last, with her, for a much longer time, and in a much more serious way, then whatever damage you get from serving in prison.

Tr. Vol. V at 590-591.

## CONCLUSION

For the above stated reasons, the petition for a writ of habeas corpus (#1) should be denied and the court should enter a judgment dismissing the action.

DATED this 28th day of June, 2010.

Thomas M. Coffin
United States Magistrate Judge

14 - FINDINGS AND RECOMMENDATION